NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL FOURTE, | |
| Plaintiff, | Civil Action No. 07-1363 |
| | OPINION |
| COUNTRYWIDE HOME LOANS, INC., et al. | |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

Before this Court are cross-motions for summary judgment filed by plaintiff, Michael Fourte ("Fourte"), and defendants, Countrywide Home Loans, Inc., Countrywide Financial Corp., and Countrywide Bank (collectively known as "Countrywide"). Also before the Court is a motion to amend the complaint, brought by Fourte, and a motion to amend the answer, brought by Countrywide. For the reasons that follow, Countrywide's motion for summary judgment is denied, Fourte's motion for summary judgment is granted in part and denied in part, and both the motion to amend the answer and the motion to amend the complaint are granted.

**Statement of Facts**

In January 2006, Fourte entered into an agreement of sale to purchase a property located at 331 Orange Road, Montclair, New Jersey. Shortly thereafter, in March 2006, Fourte obtained a purchase money mortgage in the amount of $544,000 and a home equity line of credit

1

("HELOC") in the amount of $68,000 from Countrywide for the purchase of said property. Both loans had adjustable interest rates. The mortgage also contained a "pay option," allowing for four different payment option methods for the mortgagor each month: 1) an option that would result in the entire loan being paid off in 30 years; 2) an option that would result in the entire loan being paid off in 15 years; 3) an option to pay only the interest that accrued the month before (an "interest only" option); and 4) a minimum payment that was less than the interest accrued the month before, resulting in the remaining accrued interest being added to the principal loan amount (a "minimum payment" option). While payment amounts for the first three options are recalculated monthly based upon the interest rate and principal amount left of the balance of the loan, the minimum payment option is recalculated annually in April, as it is not based on the interest amount due. At the time, the interest rate on both loans was in excess of 6%.

On or about September 18, 2006, Fourte, a reservist in the United States Navy, received military orders to report for duty on October 14, 2006. The next day, Fourte contacted Countrywide to notify them of same and to apply for relief under the Servicemembers' Civil Relief Act ("SCRA") with regard to the interest rate on his mortgage and HELOC, which at that point was in excess of 6%. Copies of the orders were forwarded to Countrywide on or about October 5, 2006.[1] Countrywide originally asserted that it made an interest rate reduction pursuant to the SCRA[2] to Fourte's accounts effective October 1, 2006, although it now

---

[1] It is unclear from the briefs if this is the date of receipt by Countrywide, or the date on which Fourte forwarded the documents. Fourte indicates the date was much earlier, on September 25, 2006. However, according to Countrywide, it did not have the orders until October.

[2] Pursuant to Section 527(a)(1) of the SCRA that was in effect at the time Fourte received his orders, "[a]n obligation or liability bearing interest at a rate in excess of 6 percent

acknowledges it never applied the reduction to the HELOC loan and did not apply it to the home mortgage until October 24, 2006.  Fourte maintains that Countrywide failed to keep the interest rate at this lower level for much of the time that he was on active duty.  In any case, the minimum payment amount on the mortgage did not change on October 1, 2006, despite the interest cap.  On November 13, 2006, Fourte paid the HELOC off in full.

Countrywide claims that, in addition to the interest rate cap, it applied "Military Credits" to Fourte's mortgage from November 2006 through October 2007.  These credits worked to forgive the interest in excess of 6% that would normally have accrued on Fourte's mortgage had the interest cap not been in place.[3]  Fourte states that these credits were not applied for much of the time period Countrywide claims.  Fourte's initial orders were modified, and his term of service ended on March 14, 2007.  On March 30, 2007, Fourte received another set of orders to report for duty from April 20, 2007 through May 8, 2007.  Subsequently, on June 14, 2007, Fourte received a third set of orders to report for duty from June 18, 2007 through June 18, 2009.  Despite these orders being in place, and despite a letter sent to Fourte by Countrywide on July 26, 2007, lowering the minimum payment on Fourte's mortgage, as of December 31, 2008, Countrywide indicates that Fourte is $20,493.90 past due on his mortgage payments, including an

---

per year that is incurred by a service member . . . before the service member enters military service shall not bear interest at a rate in excess of 6 percent per year during the period of military service."

[3] Countrywide claims that because both the cap and the credits were in place during the November 2006-October 2007 period, some measure of double-crediting of Fourte's mortgage account took place.  However, Countrywide admits that it "inadvertently recalculated" the interest on Fourte's mortgage from 6% to 8.275% for the months of April, June, July, August, September, and October 2007.  Thus, it would appear that no double-crediting took place during those months.

3

alleged missed payment from April 2007 in the amount of $2,997.48.

On March 25, 2007, in the midst of these issues, Fourte, *pro se*, filed a complaint against Countrywide with an Order to Show Cause, alleging violations of the SCRA, and fraud with malice. After retaining counsel, Fourte filed an amended putative class action complaint on June 20, 2007, alleging violations of the SCRA, fraud with malice, violations of the New Jersey Consumer Fraud Act ("CFA"), fraudulent misrepresentation, negligence, and a request for injunctive relief against Countrywide. Countrywide filed its answer to the amended complaint on September 19, 2007.

**Discussion**

There are several matters currently before the Court. They are:

1. Countrywide has moved for summary judgment on all counts against it on the grounds that Plaintiff did not suffer any actual losses and thus lacks standing;

2. Plaintiff seeks summary judgment on Countrywide's liability and for injunctive relief;

3. Countrywide seeks leave to amend its answer and to assert new counterclaims; and;

4. Plaintiff has moved to amend the complaint and add three new named plaintiffs.

These matters are addressed below.

I. Motions for Summary Judgment - Stand of Review

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact, and that the evidence establishes the movant's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986). A genuine issue of fact exists only if a reasonable jury could return a verdict for the non-movant, and it is material only if it may affect the outcome of the suit based upon substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After the movant has satisfied this burden, the non-moving party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

    A.    Countrywide's Motion for Summary Judgment as to Standing

Countrywide moves for summary judgment based upon Plaintiff's lack of standing. In order to meet the judicial prerequisites for standing, a plaintiff must first prove that he or she has "suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). Next, plaintiff must demonstrate "a causal connection between the injury and the conduct complained of." *Id.*

Finally, plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal quotation marks omitted). Countrywide claims that Plaintiff is incapable of doing this for two reasons: First, Countrywide claims Plaintiff actually received a windfall, not an injury, due to the double credits and the failure to pay the April 2007 mortgage payment. Second, Countrywide avers Plaintiff was not entitled to the benefits of the SCRA in the first place. Both of these arguments fail.

Countrywide's first argument is flawed because the issue of standing is not resolved by a determination of the actual facts of the underlying dispute because such facts are resolved by the trier of fact. Rather, the proper inquiry is whether the plaintiff has alleged sufficient facts to show an injury in fact, a causal connection between the injury allegedly suffered and the conduct complained of, and that the injury will be redressed by the relief sought. Here, plaintiff has done so. He has proffered voluminous evidence that Countrywide's actions have caused him financial injury, and said injury is within this Court's power to redress. For this Court to grant Countrywide's motion, it would be required to ignore the traditional standard for summary judgment and to construe the disputed facts in the *moving* party's favor.

Countrywide's second argument is based on the text of §527(c) of the SCRA, which provides:

> CREDITOR PROTECTION – A court may grant a creditor relief from the limitations of this section if, in the opinion of the court, the ability of the servicemember to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service.

Countrywide argues that Plaintiff was not entitled to SCRA credit because Plaintiff's income actually increased after he began active duty, and thus was never injured by Countrywide's

6

actions. This argument ignores the text of the statute, which only asks whether the servicemember's ability to pay the mortgage is *materially affected* by being called to active duty, not whether the servicemember's income increased. Here, Plaintiff, a recent law school graduate and holder of multiple real estate licenses, has introduced credible evidence that his potential income as a private citizen exceeded his actual income as a servicemember. Moreover, Plaintiff has also proffered evidence that he faced substantial expenses and financial hardships as a result of being called to active duty. Countrywide disputes Plaintiff's calculations, but this only shows that there are still significant questions of fact on this point that cannot be properly resolved in a summary judgment motion.

For these reasons, Countrywide's motion for summary judgment for lack of standing is denied.[4]

B. Countrywide's Motion for Summary Judgment on counts related to the CFA

Countrywide has also moved for summary judgment as to all portions of the complaint dealing with the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, *et seq.*). As a preliminary matter, one must first consider whether §527 of the SCRA preempts any recovery for the Plaintiff under the CFA, a state law. In October of 2008, §527 was amended to include subsection (f) which states: "[t]he penalties provided under subsection (e) are in addition to and do not preclude any other remedy available under law to a person claiming relief under this section, including any

---

[4] In opposition to Countrywide's motion, Plaintiff also argued that the affidavit which formed almost the entire basis of Countrywide's version of the facts should be completely disregarded under the Sham Affidavit Doctrine. The argument is that the affidavit is so riddled with inaccuracies and contradictory statements, that the Court should dismiss it as not credible. Because Countrywide's motion for summary judgment fails on other grounds, there is no reason for the Court to make such a determination here.

award for consequential or punitive damages." Were this subsection in force at the time that Plaintiff alleges Countrywide mishandled his loan, there would be no doubt as to his ability to recover under the CFA. The question here is whether the SCRA preempted state law before the addition of subsection (f).

"The preemption doctrine is rooted in Article VI of the United States Constitution, which states that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting U.S. Const. art. VI, cl. 2). There are three forms of preemption that may be applied to state law pursuant to the Supremacy Clause: express, field, and implied conflict preemption. *Id.* (citing *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Congressional intent is the guiding force behind the district court's preemption inquiry. *Id.*; *see also Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

In conducting this inquiry, however, the court must begin "by applying a presumption against preemption." *Holk*, 575 F. 3d at 334 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). This presumption requires courts to "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Because of this presumption against preemption, examples of federal laws that are "so powerful as to displace entirely any state cause of action" are rare. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). If a statute does not expressly indicate that it preempts state law, then courts can determine whether it does so implicitly by considering

four factors: 1) the aim and intent of Congress; 2) the pervasiveness of the federal regulatory scheme; 3) whether the subject matter of the regulation demands federal exclusivity in order to achieve uniformity; 4) whether the state law creates an obstacle to the workings of the federal law.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-223 (1983).  An application of these factors to §527 of the SCRA demonstrates that Congress likely did not intend to preempt state laws like CFA.

Congress's intent in passing the SCRA can be gleaned from §502, which declares that the Act's purpose is "to provide for, strengthen, and expedite the national defense through protection extended by this Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. App. § 502(1). This stated purpose does not limit  servicemembers to only federal remedies. Nor is the Act so pervasive as to crowd out laws like the CFA, which only occurs when a federal statute regulates nearly all aspects of an industry or practice. *See, e.g.*, *Hines v. Davidowitz*, 312 U.S. 52, 68 (1941) (holding that a comprehensive federal statute governing the registration of immigrant aliens preempts state laws on the same subject).  Here, the SCRA is clearly not meant to provide a complete consumer lending regulatory system, but rather to address specific practices affecting only one class of citizen. The third and fourth factors are equally inapplicable to the relationship between the SCRA and CFA. The amount of damages available to victims of consumer fraud does not "demand" uniformity in the way that the Court has said that other practices do. *See Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 168 (1942) (holding that regulations regarding the interstate shipment of butter requires national uniformity); *Pennsylvania R. Co. v. Public Service Commission of Com. of Pennsylvania*, 250 U.S. 566, 568 (1919) (holding that standards

of railcar construction require uniformity). Finally, the CFA's provision of treble damages to victims of consumer fraud does not impede the workings of the SCRA; if anything it provides further incentive for mortgage companies to comply with the federal statute's dictates.

Countrywide makes two arguments in support of this motion: first, that the CFA does not apply to the failure to adjust interest rates on real estate loans, and second, that Plaintiff cannot make use of the CFA because he has not suffered an "ascertainable loss" as required by the Act. Both of these arguments fail.

In relevant part, the CFA proscribes:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

N.J.S.A. 56:8-2. Countrywide argues that its provision of credit to Plaintiff is not covered by this Act because the term "sale" is defined as an "attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1. This argument, overlooks the New Jersey Supreme Court's holding that the CFA does apply to provisions of credit made by financial companies. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 696 A. 2d 546 (1997). "Given the broad language of the CFA, we conclude that its terms apply to the offering, sale, or provision of consumer credit." *Id.* at 551. Courts have since allowed suits to proceed under the CFA when the alleged fraud dealt specifically with the terms of a home mortgage. *See Associates Home Equity Services, Inc. v. Troup*, 343 N.J. Super. 254, 277 (App. Div. 2001); *Busse v. Homebank, LLC*, No. 2: 07-cv-03495, 2009 WL 424278, 7 (D.N.J. Feb. 18, 2009). Thus, Countrywide's first

argument is without merit.

Countrywide also argues that Plaintiff cannot show an ascertainable loss, as required by the statute. "To state a claim under the CFA, a private plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005) *cert. denied*, 185 N.J. 265 (citations omitted). The term "ascertainable" means that the plaintiff must proffer evidence that is "quantifiable and measurable," and not "hypothetical or illusory." *Thiedmann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Summary judgment should only be entered in favor of the defendant in a CFA claim when "a plaintiff fails to produce evidence from which a finder of fact could find or infer that a plaintiff suffered a quantifiable or otherwise measurable loss as a result of the alleged CFA unlawful practice." *Id*. at 238. Here, Plaintiff has introduced more than sufficient evidence to meet this burden. Plaintiff has provided specific details and calculations of the damages caused by Countrywide's actions. These allegations are supported by voluminous documentary evidence from which a finder of fact could infer that Plaintiff suffered a "quantifiable or otherwise measurable loss."

Thus, Countrywide's motion for summary judgment as to the CFA claims is denied.

C. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on liability only and for injunctive relief. Fourte argues that by Countrywide's own admission it did not apply the benefits of §516 and §527 of the SCRA properly to his mortgage and HELOC loans and thus violated the statute. Section

527(a) of the SCRA requires a lender to reduce the interest rate on a servicemember's mortgage to six percent "during the period of military service,"[5] beginning on "the date on which the servicemember is called to military service."  During that time, the lender is required to forgive any interest that would otherwise be due in excess of six percent.  It also states that "[t]he amount of any periodic payment due from a servicemember . . . shall be reduced by the amount of the interest forgiven . . . ."  Section 516 applies to reservists, like the Plaintiff, who are called to active duty, and it applies the rate reduction requirement of §527 to the time period between when a reservist servicemember receives his military orders and the date that he actually reports for active duty. Plaintiff seeks summary judgment on the issue of Countrywide's liability under the SCRA and CFA on each loan and on the injunctive relief he seeks.

With reference to the HELOC loan, both parties agree that Countrywide violated §516 and §527 of the SCRA.  Section 516 required Countrywide to reduce the interest rate on the HELOC loan to six percent effective on September 18, 2006, the date on which Plaintiff received his military orders directing him to report for active duty.  Countrywide's representative, Jamie Taylor, originally submitted an affidavit claiming that Countrywide applied the benefits of the SCRA on October 1, an assertion that Plaintiff challenged in multiple briefs accompanied by documentary evidence.  Taylor corrected this initial statement during her deposition and later in an affidavit submitted on March 4, 2009.  In both instances, Countrywide admitted that it never applied the benefits of SCRA to the HELOC loan before Plaintiff paid it off in its entirety on November 13, 2006.  Taylor claims that this is because Countrywide did not have enough time to

---

[5]   Section 527 of the SCRA was amended in 2008 to include a one year period of interest reduction/forgiveness after the end of the servicemember's period of active duty.

process Plaintiff's request before the loan was paid off and estimates that the benefits Plaintiff did not receive were worth about $652. Because Countrywide has essentially admitted liability, summary judgment is appropriate with respect to the HELOC loan, and is therefore granted.

Summary judgment is not appropriate, however, for Countrywide's handling of the home mortgage because there are significant disputes of material fact. Plaintiff's argument is that §516 was violated when Countrywide failed to apply the SCRA benefits on September 18, 2006, and that §527 was violated when Countrywide charged higher than six percent interest for several months while he was on active duty. Countrywide, however, has submitted affidavits and documentary evidence showing that Plaintiff received credits to his account that more than make up for any initial delay or inadvertent temporary increases to the interest rate. Plaintiff has challenged the veracity of this evidence and submitted numerous documents of his own, but it is not the role of the Court to make credibility determinations at the summary judgement stage. If all inferences are drawn in Countrywide's favor, there are still questions of fact that must be resolved. Accordingly, summary judgment is denied with regard to Countrywide's handling of the home mortgage because there are significant disputes of material facts.

Fourte's motion for permanent injunctive relief is likewise denied. A permanent injunction should only be granted after a plaintiff has succeeded on the merits of the claims at issue. *See CIBA-GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir. 1984) ("In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits . . ."); *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 nn. 2-3 (3d Cir. 1996) (moving party must show actual success on the merits prior to the issuance of a permanent injunction). In addition to success on the

merits, a plaintiff seeking a permanent injunction must also show that there is a real and immediate threat that he will again suffer the same kind of injury. *See Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987). Taken together, these requirements foreclose any possibility for issuing injunctive relief. Although Countrywide has admitted liability on its handling of the HELOC loan, that loan is now paid off and there is no risk that Plaintiff will suffer further harm. Furthermore, because Plaintiff has failed to show that he is entitled to summary judgment on the issue of Countrywide's handling of his home mortgage, he has not yet succeeded on the merits and a permanent injunction would be premature.[6]

II.   Motions to Amend - Standard of Review

Fed. R. Civ. P. 15(a) allows a party to amend its pleading by leave of court when justice so requires. Leave to amend pleadings is to be freely given. Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant leave to amend rests within the discretion of the court. *Foman*, 371 U.S. at 182. Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment. *Id.* "Only when these factors suggest that amendment would be 'unjust' should the court deny leave." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).

A.   Countrywide's Motion to Amend the Answer

Countrywide seeks leave to amend its Answer to include an additional affirmative defense, counterclaims alleging unjust enrichment, breach of contract, and negligent

---

[6] The Court is advised that Countrywide is now owned by Bank of America. Fourte has yet to prove that Bank of America, a non-party to this action, improperly handles its obligations pursuant to the SCRA.

misrepresentation, and a counterclaim for declaratory relief.  Here, Fourte opposes Countrywide's Motion with respect to the counterclaims on the basis of undue delay and futility of the proposed amendment.  These arguments will be addressed in turn.

        i.        Plaintiff contends that the amendments would cause undue delay

There is no presumptive period in which a motion for leave to amend is deemed "timely" or in which delay becomes "undue."  In *Arthur v. Maersk*, the Third Circuit found that a period of eleven months from commencement of an action to the filing of a motion to amend was not, on its face, so excessive as to be presumptively unreasonable.  *Id.* at 205.  Likewise, Defendants' act of waiting one year from the filing of the original Answer to seek leave to amend will not be deemed presumptively unreasonable.

Furthermore, delay alone does not justify denying a motion to amend.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, only when the delay places an unwarranted burden on the court or on the opposing party is a denial on the basis of delay appropriate.  *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).  Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reasons for its delay.  *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).  In gauging prejudice, the Court should consider "whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citations omitted).

Here, Fourte argues that granting Countrywide's motion would prejudice him because he had no notice of the proposed counterclaims when he was deposed by Countrywide and because

15

he would have served additional Interrogatories and Requests for Production of Documents had he known of the counterclaims. Both of these issues, however, could easily be addressed by allowing further limited discovery. While the financial burdens of additional discovery might create some burden, here Plaintiff has also submitted a motion to amend that will probably require further discovery. It would be disingenuous for Plaintiff to contend that additional discovery would prejudice him. For this reason, granting Countrywide's motion to amend would not create an undue burden on the Plaintiff.

As a final point on the issue of undue delay, it is worth noting that the decision of whether to grant leave to amend is always within the discretion of the Court. Although the four *Forman* factors listed above represent the most common grounds for denying a motion to amend, courts have also considered their own responsibility to conserve scarce judicial resources.

> Beyond prejudice to the parties, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts. Delay impairs the "public interest in the prompt resolution of legal disputes. The interests of justice go beyond the interests of the parties to the particular suit; . . . delay in resolving a suit may harm other litigants by making them wait longer in the court queue."

*Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) (citations omitted); *see also Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party."). This interest in judicial economy is used to deny a motion to amend when a trial is imminent. *See Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120 (5th Cir. 1982) (holding that the trial court did not abuse its discretion when it refused to approve an amendment filed the day before the pretrial conference); *Campbell v. Ingersoll Milling Mach.*

*Co.*, 893 F.2d 925, 927 (7th Cir. 1990) (holding that a district judge is entitled to deny a motion to amend made three weeks before the start of a trial). Here, no pre-trial conference has occurred, no trial date has been set, and the parties have not yet finished discovery. Although this litigation has now been ongoing for more than two years, it does not present the kind of situation that has often led courts to deny a motion to amend in the interest of judicial economy.

        ii.        Plaintiff contends that the amendments would be futile.

Plaintiff's second argument is that Countrywide's proposed amendments would be futile. An amendment is considered futile if it advances a claim or defense that is legally insufficient on its face. Courts may properly deny a motion to amend when the amendment would not withstand a motion to dismiss. *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). Under Fed. R. Civ. P. 12(b)(6), dismissal should not be ordered unless the alleged facts, taken as true, fail to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149 (2001). Under this standard, "the court must accept as true the allegations in [the defendant's] proposed affirmative defenses and construe those allegations in the light most favorable to [the defendant]. *Miller v. Beneficial Mgmt. Corp.*, 844 F. Supp. 990, 1001 (quoting *Fireman's Fund Ins. Co. v. Krohn*, No. 91 Civ. 3546, 1993 WL 299268, at *4 (S.D.N.Y. Aug. 3, 1993)).

Here, Countrywide has pled sufficient facts to satisfy the liberal standards detailed above. Plaintiff argues that Countrywide's counterclaims are all based on the factually inaccurate allegation that Plaintiff received a windfall because of double crediting and other errors made by

17

Countrywide. Plaintiff also argues that the affidavit upon which Countrywide relies has so many inaccuracies that it should be disregarded under the sham affidavit doctrine.[7] For purposes of this motion, however, it is not the role of the Court to determine the factual accuracy of Countrywide's allegations. As the question is only whether Countrywide has alleged sufficient facts to survive a motion to dismiss, the Court must assume that Countrywide's factual allegations are true and only ask whether those facts are sufficient to support a claim for relief. For this reason, Countrywide's proposed counterclaims are not futile, and its motion should not be denied on these grounds.

Because there are no legitimate reasons to deny Countrywide's motion to amend, Countrywide's motion to amend its answer is granted.

B.  Plaintiff's Motion to Amend the Complaint

Plaintiff wishes to amend the complaint in three ways. First, he seeks to clarify his existing allegations by adding new information that was revealed during discovery. Second, he seeks to add new parties (Christopher Schroeder, Alisa Schroeder, and Patrick Ferral) as plaintiffs. Third, he seeks leave to file supplemental pleadings which address transactions and events that occurred after the complaint was filed but are relevant to the issues and allegations of the case. The standard in determining whether this motion should be granted is detailed above. Briefly stated, the Court should grant leave to amend except in cases of: (1) undue delay; (2) bad

---

[7] Use of the sham affidavit doctrine is usually confined to motions for summary judgment. In its classic form, the doctrine does not allow the submission of affidavits that contradict prior deposition testimony as a way to defeat motions for summary judgment. *See Baer v. Chase*, 392 F.3d 609, 623-24 (3d Cir. 2004). Here, Countrywide is not using an affidavit to avoid a ruling for summary judgment, but rather as a basis for a motion to amend. The difference is that in the latter, the Court must assume that the facts stated by Countrywide are true, which does not allow an inquiry into the veracity of the affidavit.

faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment. *See Foman*, 371 U.S. at 182.

The only aspect of Plaintiff's motion that Countrywide has challenged is the attempt to add new parties. Countrywide's argument is that the amendment would be futile because the prospective parties lack standing. Countrywide contends that none of the prospective plaintiffs actually incurred the damages alleged and in fact received financial windfall from Countrywide and the Schroeders were not entitled to the benefits of the SCRA in the first place. This argument ignores the standard for futility of amendment presented above. The question at this stage is only whether the moving party has alleged sufficient facts that, if true, would support a claim for relief. There is sufficient evidence that the prospective plaintiffs were entitled to the SCRA and that they were injured by Countrywide's failure to properly apply the statute.

For these reasons, Fourte's motion to amend the complaint is granted.

**Conclusion**

For the foregoing reasons, Countrywide's motion for summary judgment is denied in its entirety; Fourte's motion for summary judgment as to Countrywide's liability on the HELOC loan is granted, and the remainder of Fourte's motion for summary judgment is denied; and both the motion to amend the answer and the motion to amend the complaint are granted.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 15, 2009